# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| BARNARD JORDAN, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. _____ |
| ) | |
| XPO LOGISTICS, INC & ) | |
| XPO LOGISTICS, LLC., | |
|     Defendants. ) | |
| ) | |

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff Barnard Jordan, on behalf of himself, by and through counsel, hereby files this Complaint against XPO Logistics, Inc. and XPO Logistics, LLC., Defendants herein, and alleges:

### PARTIES

1. Plaintiff Barnard Jordan, an individual, resides in Orange County, Florida. During Plaintiff Jordan's employment with Defendants, he worked at Defendants' business location in Orlando, Florida as a Driver.

2. XPO Logistics, Inc. is a corporation under the laws of the State of Delaware, with its principle place of business in the State of North Carolina. According to the Application for Certificate of Authority for a Foreign For-Profit Corporation that XPO Logistics, Inc. filed with Florida's Department of State Division of Corporations on October 19, 2012, the name it uses in the State of Florida is XPO Logistics, LLC.

3. According to its website: "XPO Logistics is a top ten global logistics and transportation service company… with over 100,000 employees and 1,504 locations." According to http://www.xpologistics.com/about-us/our-company (last visited March 1, 2020). XPO

Logistics, Inc. and XPO Logistics, LLC. are registered and in good standing in the State of Florida.

4. At all relevant times, Defendants have been the employers of Plaintiff. Therefore, Defendants are liable to the Plaintiff as an employer, joint employer, single employer, and/or otherwise according to statutory law.

5. At all relevant times, Defendants acted by and through their agents, servants, and employees, each of whom acted at all relevant times herein in the course and scope of their employment with and for Defendants.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction under the action arising under 42 U.S.C. Section 1983 et. seq. as hereinafter more fully appears.

7. The United States District Court for the Middle District of Florida has personal jurisdiction because Defendants are located and conduct business within this District.

8. Venue is proper in this Court pursuant to 28 U.S.C §1391(b), in so far as the Defendants have offices, conduct business and can be found in the Middle District of Florida and the causes of action set forth herein arisen and occurred in part in the Middle District of Florida. Venue is also proper under 29 U.S.C §1132(e)(2) because Defendants have substantial business contacts within the Middle District of Florida.

9. At all relevant times, Defendants have been "employer[s]" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

10. At all relevant times, Defendants have employed "employees", including the Plaintiff herein.

11. At all relevant times, Plaintiff was engaged in commerce and/or worked for

Defendants, which were enterprises engaged in commerce.

12. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

13. At all times relevant herein, Defendants have had gross operating revenues in excess of $500,000.00 (Five Hundred Thousand Dollars).

## NATURE OF ACTION

5. This is an action under Title 42 U.S.C. Section 2000e-2(a) et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to redress violations of the Florida Civil Rights Act of 1077, as amended, F.S. Chapter 760 (the "FCRA").

6. The Plaintiff was discriminated against and subsequently terminated on the basis of his race, African-American/Black and retaliated against for forgoing complaints of unlawful activity.

## CONDITIONS PRECEDENT

7. All conditions precedent to jurisdiction have occurred or been complied with: On or about September 9, 2019, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter and is attached hereto as Exhibit "A".

## FACTS

8. Barnard Jordan was hired as a driver by Conway Freight September 11, 1995.

9. Mr. Jordan continued his employment as a driver after Conway Freight was purchased by XPO Logistics, Inc. in October 2015.

10. Under XPO, Mr. Jordan amassed numerous accolades and achieved significant milestones including being the first and only driver in Orlando with a 'Two-Million Miles Safe and Injury Free' driving record.

11. Mr. Jordan served in the United States Military for four years, in the U.S. Marine Corps as Infantry/Rifleman.

12. Mr. Jordan has over 25 years of experience as a professional transport driver and driver trainer. Mr. Jordan has completed hundreds of hours of continued education in his field. Mr. Jordan is highly skilled and well-equipped to perform all functions of his job.

13. On or about May 4th, Mr. Jordan was inside the "yard" and attempting report his arrival via his assigned SCO device issued by the Defendants. However, the SCO device was malfunctioning, preventing Mr. Jordan from completing his requirement of checking-in as "arrived".

14. Mr. Jordan, proceeded to work and unhitch the first of his trailers in hopes that the handheld, company equipment would begin to function properly.

15. Upon returning to the cab of his vehicle, Mr. Jordan observed the device was still not functioning, despite this he continued to fulfil his responsibilities and proceeded to back his vehicle to the second trailer, which was approximately six inches away.

16. It was during this time that the camera in the vehicle was activated as Mr. Jordan held the company device that was malfunctioning in his hand.

17. While he was in the "yard" Mr. Jordan was alone, not near any other drivers or personnel and using reasonable efforts to complete his responsibilities.

18. On May 3rd, the day prior to the above incident, Mr. Jordan traveled to the Defendants' Mechanic shop at the Orlando Service Center to file a complaint and make a request for repair or replacement SCO device and the cradle that the handheld device sits

in. Specifically, Mr. Jordan reported the device was malfunctioning as had been previously reported by other employees, experiencing similar issues. In addition, Mr. Jordan informed them that the cradle for the SCO device was also not functioning properly and would not hold the device properly as any attempts to utilize the equipment resulted in the device falling out of the cradle and into the cab or floor of the vehicle.

19. Mr. Jordan expressed his concerns for potential safety risks and also fear of being held responsible for any damage as a result thereof.

20. Mr. Jordan was informed by the mechanic shop employees, that they did not have time to make any repairs and that he as driver was not authorized to attempt any repairs or make alterations to the device or the cradle that it sits in.

21. Mr. Jordan was advised on May 20, 2019 that he was being terminated for violating LTL Safety Policy after previously being advised he had been issued a warning for that very infraction.

22. This was despite being informed on multiple separate occasions by his direct supervisor that in accordance with Company policy which indicated "when on XPO property or in the "yard" the camera going off would not be considered an offense or constitute grounds for termination."

23. On May 29, Mr. Jordan participated via telephone in his appeal hearing, which lasted approximately 20 minutes before the call concluded and Mr. Jordan was advised he would receive the committee's decision.

24. On or about May 30th Mr. Jordan received an unsigned letter which indicated the Committee decided to uphold his termination.

25. On May 30, 2019 Mr. James Sullivan, an employee with XPO submitted an internal email urging the company to reconsider Mr. Jordan's termination due to his

performance record and the known technical issues with the company's issued hand-held SCO devices.

26. Mr. Jordan, is an African-American/Black man, who is a member of a protected class.

27. Mr. Jordan, has not been afforded the same benefit of being reinstated after his appeal hearing and reasonable preventative measures being considered, as was the case with former colleagues of Mr. Jordan.

28. The distinguishing factor with those persons and Mr. Jordan, is those individuals are not members of Mr. Jordan's protected class, rather were white males.

29. Despite, Mr. Jordan demonstrating exemplary behavior, while employed, training other employees, and serving as an asset to the company and XPO's knowledge of the equipment malfunctioning, and even the company's own standard concerning the internal policy at subject herein, Mr. Jordan was terminated from his position unceremoniously.

30. Even after his separation from XPO Logistics, LLC and XPO Logistics, Inc., Mr. Jordan continued to receive adverse treatment. Specifically, Mr. Jordan made sincere efforts to gain new employment, but when the potential employers contacted Defendants, they were advised Mr. Jordan was never employed with the company and was not in their database.

31. When attempting to obtain insurance as an independent driver, again Defendants failed to provide the requisite information and again indicated Mr. Jordan was not in their database. The direct actions of Defendants caused undue hardship to Mr. Jordan and his ability to earn wages.

32. Mr. Jordan has received no relief, as reflected in his claim for discrimination as it is clear that Mr. Jordan has been treated differently based on his race.

33. As a direct and proximate result of the actions by Defendant, Plaintiff has suffered economic hardships, financial loss, physical and emotional damage. As a direct and proximate cause of actions of Defendant, Plaintiff has endured an extreme adverse impact to his quality of life.

## COUNT 1
## RACE DISCRIMINATION

34. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 33.

35. Defendant, XPO Logistics, intentionally engaged in unlawful employment practices involving Plaintiff because of his race.

36. African-Americans at Defendants place of employment have been subjected to a stricter level of scrutiny than similarly situated white co-workers. As an African-American, Mr. Jordan, was reprimanded and disciplined for incidents that similarly situated white employees were not disciplined for or received vastly lesser consequences.

37. On one occasion a white employee was terminated in violation of holding a mobile device in his hand while operating a company vehicle on the open road. This employee filed an appeal and was able to return to work, despite having received three prior company violations.

38. Mr. Jordan, as an African-American, was determined to be violation of the same policy as white co-worker, however, Mr. Jordan was not operating his truck on the open road, rather in the closed property of the employer holding the company issued device.

39. Mr. Jordan was terminated, despite the circumstances known by the Defendants. Mr. Jordan's appeal lasted less than 20 minutes and the decision to uphold his termination was decided. Mr. Jordan and his colleague were treated differently, and the clear distinguishable factor is that Mr. Jordan is African-American.

40. The Defendants are liable as they knew or should have known, of the racial disparities in their policies and practices, but failed to take prompt and effective remedial action. The Plaintiff has experienced and witnessed discriminatory behavior towards African-American employees up through his wrongful termination. The unlawful employment practices of Defendants, had a disparate and adverse impact on Plaintiff because of his race. Such employment practices were not job-related and were not consistent with business necessity.

41. Defendants, XPO Logistics, Inc. and XPO Logistics, LLC. also violated Plaintiff's rights under 42 U.S.C. Section 1981.

42. Defendants, XPO Logistics, Inc. and XPO Logistics, LLC, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race in violation of 42 U.S.C. Section 2000e-2(a) and 42 U.S.C. Section 1981.

43. Defendants, XPO Logistics, Inc. and XPO Logistics, LLC, treated Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a) and 42 U.S.C. Section 1981.

### COUNT 2
### RETALIATION
### BY XPO LOGISTICS, INC AND XPO LOGISTICS, LLC.

44. Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 43.

Defendants, XPO Logistics, Inc. and XPO Logistics, LLC.,

45.     Plaintiff alleges that Defendants, instituted a campaign of retaliation which included failing to provide non-privileged information to third-party and potential employers/vendors to confirm Plaintiff's employment with Defendant.  This retaliation was and is due to Plaintiff exercising Plaintiff's rights by opposing a discriminatory practice and making a charge.  Plaintiff suffered damages for which Plaintiff herein sues.

### COUNT 3
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP BY XPO LOGISTICS, INC AND XPO LOGISTICS, LLC.

46.     Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 43.

47.     At all relevant times, there was a business relationship between Plaintiff and Defendant.

48.     At all relevant times Defendants, XPO Logistics, Inc. and XPO Logistics, LLC., were aware of the business relationship between Plaintiff and potential employer.

49.     Defendants, intentionally and unjustifiably interfered with the contract or business relationship between Plaintiff and future employers.

50.     On separate occasions potential employers contacted Defendant to verify former employment of Plaintiff by Defendants, to which Defendants informed the potential employer that "Plaintiff was not in their system, not a former employee."

51.     As a result, Plaintiff's offer for employment by potential employer was withdrawn.

52.     Plaintiff suffered damages as a result of Defendants' conduct.

### COUNT 4
### FCRA (Disparate Treatment)

53.     Plaintiff re-alleges the allegations of Paragraphs 1through 43 as though fully set

forth herein.

54. The FCRA prohibits discrimination and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

55. Plaintiff complained to Defendants about conduct that constituted racial discrimination and subsequently followed internal and external administrative procedures to resolve the concerns, by addressing his immediate supervisor and the Human Resources Department of Defendants and ultimately filing a formal complaint through the EEOC regarding the Defendants' discriminatory practices. Plaintiff engaged in protected activity pursuant to FCRA.

56. Despite Plaintiff's complaints, no action was taken by Defendant to remedy the unlawful conduct. Instead, Plaintiff was terminated.

57. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee; which Plaintiff is entitled to recover under applicable law.

## COUNT 5
## ATTORNEY'S FEES

58. Plaintiff has employed Kevin Allen Nash for representation in this action, and

has agreed to pay a reasonable attorney fee to Kevin Allen Nash.

59. Plaintiff is entitled to recover reasonable attorney's fees incurred in connection with this action pursuant to, inter alia, Section 760.11 of the Florida Statutes.

## DEMAND FOR JURY TRIAL

60. Plaintiff hereby demands a trial of this action by jury on all causes of action and claims with respect to which Plaintiff has a right to jury trial.

## DESIGNATION OF PLACE OF TRIAL

61. Plaintiff hereby designates the United States District Court for the Middle District of Florida at Orlando, Florida as the place of trial.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff demands a jury trial of this action, and further demands judgment against Defendants for general damages, specific relief, attorney's fees, and for such other and further relief, in law or in equity, to which Plaintiff may be justly entitled.

**March 13, 2020**

Respectfully submitted,

/s/ Kevin Allen Nash
Kevin C. Allen Nash
Florida Bar Number: 98229
Bruce A. Mount, Jr.
Florida Bar Number: 88754
Attorneys for Plaintiff
MOUNT & NASH LAW GROUP, P.A.
101 Sunnytown Rd
Ste. 108
Casselberry, FL  32707
Telephone: (407) 622-0145
Fax: (407) 329-3332
E-Mail: kevin@mountnashlaw.com
Bruce@mountnashlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020, a copy of the foregoing document was e-mailed, electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing and hand delivered to the persons listed below.

Sonja Kelly, HR Representative
XPO Logistics
10975 Florida Crown Drive
Orlando, FL 32824

Registered Agent Solutions, Inc.
155 Office Plaza Dr. Ste. A
Tallahassee, FL 32301

Kathryn T. Parham, Esq.
6410 Popular Ave., Ste. 300
Memphis, TN 38119

*/s/Kevin Allen Nash*.
Attorney for Plaintiff